UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNIVERSITY PLASTIC SURGERY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>AETNA LIFE INSURANCE COMPANY,<br><br>Defendant. | Civil Case No. 1:20-cv-2174<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

By way of this Complaint, and to the best of its knowledge, information and belief, formed upon a reasonable inquiry under the circumstances, Plaintiff University Plastic Surgery, LLC, ("University" or "Plaintiff") brings this action against Aetna Life Insurance Company ("Aetna" or "Defendant").

1. This is a breach of contract action concerning Aetna's under-reimbursement of University for gender reassignment surgery and other procedures.

2. Aetna was the insurer of the Aetna Open Access Elect Choice Plan (the "Plan"), a plan under which University's patient, RA, was a plan member. Aetna offered the Plan for RA's employer, NYC Crane Hoist & Rigging LLC.

3. University was an out-of-network provider, meaning that its surgeons, Loren S. Schechter, M.D., and Charles Galanis, M.D., did not participate in Aetna's network. Aetna entered into a contractual agreement with University by which it granted University an in-network exception for the surgeries. Aetna promised that the surgeries would be reimbursed at the in-network benefit level.

4. After Drs. Schechter and Galanis performed the pre-authorized surgeries under the contractual in-network exception, Aetna breached this agreement and refused to apply the in-network exception. It failed to reimburse the surgeries at the in-network benefit level. Instead, Aetna reimbursed University based on a percentage of the Medicare allowable rate, which it paid to out-of-network providers. Aetna's breach left University with a total of $303,200.37 in damages for the unpaid surgeries.

## JURISDICTION

5. The Court has jurisdiction over University's direct claims under 28 U.S.C. § 1332(a) and (c) (diversity). The parties are diverse and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. With respect to 28 U.S.C. § 1332(c), Defendant Aetna's principal place of business is Hartford, Connecticut.

6. The Court has personal jurisdiction over the parties because University submits to the jurisdiction of this Court, and Aetna systematically and continuously conducts business in the State of Illinois, and otherwise has minimum contacts with the State of Illinois sufficient to establish personal jurisdiction over it.

7. Venue is appropriately laid in this District under 28 U.S.C. § 1391 because (a) Aetna transacts business in the Northern District of Illinois; (b) Aetna conducts a substantial amount of business in the Northern District of Illinois, including marketing, advertising and selling insurance products, and insures and administers group healthcare insurance plans both inside and outside the Northern District of Illinois; and (c) University transacts business in the Northern District of Illinois.

## PARTIES

8. Plaintiff University Plastic Surgery, LLC, is a surgical practice of plastic and reconstructive surgeons. The University's principal office is in Morton Grove, Illinois.

9. Defendant Aetna Life Insurance Company is a health care insurance company. Its principal office is in Hartford, Connecticut.

## FACTUAL ALLEGATIONS

10. Drs. Schechter and Galanis performed three surgeries on Patient RA – on July 15, 2015, July 31, 2015, and January 15, 2016. Prior to each of these three surgeries, Aetna approved coverage for all of the surgical procedures.

11. For the July 15, 2015, surgical procedures, Aetna approved the surgery billed with procedure codes 57110 (removal of vaginal wall), 15757 (free skin flap), 15750 (neurovascular pedicle flap), 64874 (suture of nerve), and 64856 (suture of major peripheral nerve, arm or leg), 15101 (split graft), 15100 (split thickness autograft), 53430 (reconstruction of female urethra), 97606 (negative pressure wound therapy), 51102 (aspiration bladder insertion of catheter), and 55180 (scrotoplasty).

12. Aetna stated: "Coverage for this service has been approved, subject to the requirements of this letter."

13. This letter also stated that Aetna had verified that the Patient was eligible for coverage under the Plan, that the Plan provided coverage for the surgery, and that the surgery was medically necessary.

14. Critically, Aetna stated that the Plan did not have out-of-network benefits. Therefore, by approving coverage for the surgical services, Aetna did so at an in-network level, and provided what is called an "in-network exception."

15. For the second surgery Drs. Schechter and Galanis performed on July 31, 2015, Aetna approved the surgery billed with procedure codes 15101 and 15100.

16. Aetna stated for each procedure code: "This service is covered at an in-network benefit level."

17. This statement represented a promise to reimburse University based on an "in-network exception."

18. For the third surgery Drs. Schechter and Galanis performed on January 15, 2016, Aetna approved the surgery billed with procedure codes 15240 (full thickness graft), 51102, 52000 (cystourethroscopy), and 53420 (two-stage reconstruction of urethra).

19. Aetna stated that its "Approved Benefit Level" for the surgical procedures to be performed on January 15, 2016, was: "Pay at highest in-network benefit."

20. After performing the July 15, 2015, surgical procedures, University submitted an invoice for Dr. Schechter as primary surgeon on a CMS-1500 form to Aetna, as required, for $175,500.00. The billed amounts, paid amounts, and CPT codes were as follows:

| CPT | Billed Amount | Paid Amount |
| --- | --- | --- |
| 15757-22 | $30,000.00 | $3,293.35 |
| 53415 | $22,500.00 | $792.73 |
| 64910 | $20,000.00 | $2,360.00 |
| 54348 | $25,000.00 | $349.94 |
| 54360 | $17,500.00 | $252.42 |
| 55180 | $15,000.00 | $965.35 |
| 15750 | $10,000.00 | $328.78 |
| 15273 | $10,000.00 | $73.76 |
| 64859 | $5,000.00 | $0.00 |
| 15274 | $5,000.00 | $134.90 |
| 64856 | $5,000.00 | $0.00 |
| 15240 | $3,500.00 | $280.46 |
| 53410 | $3,500.00 | $0.00 |

| | | |
|---|---|---|
| 97606 | 3,500.00 | 44.12 |
| **Total** | **$175,500.00** | **$8,875.81** |

21. Aetna stated in its Explanation of Benefits ("EOB") that "nonparticipating provider" surgical services were paid at the lesser of billed charges or 125% of the "Medicare Allowable."

22. After performing the July 15, 2015, surgical procedures, University submitted an invoice for Dr. Galanis as assistant surgeon on a CMS-1500 form to Aetna, as required, for $115,000.00. The billed amounts, paid amounts, and CPT codes were as follows:

| CPT | Billed Amount | Paid Amount |
|---|---|---|
| 15757-80 | $30,000.00 | $526.94 |
| 53415-80 | $22,500.00 | $126.84 |
| 64910-80 | $20,000.00 | $47.20 |
| 54348-80 | $25,000.00 | $54.99 |
| 54360-80 | $17,500.00 | $40.39 |
| **Total** | **$115,000.00** | **$796.36** |

23. Aetna stated in its Explanation of Benefits ("EOB") that "nonparticipating provider" surgical services were paid at the lesser of billed charges or 125% of the "Medicare Allowable."

24. Aetna also artificially split the surgical procedures billed as CPT code 64910-80 and billed as $20,000.00 into two separate lines and processed separately. By this sleight of hand, Aetna reimbursed one assistant surgery bill for $10,000.00 at $47.20, and paid nothing for the other $10,000.00 purported "bill," which it mischaracterized as a bill for a "second" assistant surgeon.

25. After performing the July 31, 2015, surgical procedures, University submitted an invoice for Dr. Schechter on a CMS-1500 form to Aetna, as required, for $12,500.00. The billed amounts, paid amounts, and CPT codes were as follows:

| CPT | Billed Amount | Paid Amount |
| --- | --- | --- |
| 15003 | $1,500.00 | $0 |
| 15100 | $6,000.00 | $0 |
| 15101 | $3,000.00 | $0 |
| 15002 | $2,000.00 | $0 |
| **Total** | **$12,500.00** | **$0** |

26. Aetna paid nothing for all of the July 31, 2015, surgical procedures performed by Dr. Schechter despite the fact that Aetna promised that they were "covered at an in-network benefit level."

27. After performing the January 15, 2016, surgical procedures, University submitted an invoice for Dr. Schechter on a CMS-1500 form to Aetna, as required, for $11,000.00. The billed amounts, paid amounts, and CPT codes were as follows:

| CPT | Billed Amount | Paid Amount |
| --- | --- | --- |
| 53420 | $7,500.00 | $0 |
| 15240 | $3,500.00 | $1,127.46 |
| **Total** | **$11,000.00** | **$1,127.46** |

28. The amounts Aetna paid for the January 15, 2016, surgical procedures did not represent its "in-network benefit level."

29. When Aetna agreed to the in-network exception with University, an out-of-network provider, Aetna agreed that there was no provider in its network qualified to provide its member's requested surgeries. Aetna must therefore turn to the member's out-of-network provider and offer

the member the same benefits the member would have had if there had been an in-network provider available. Aetna must make available the identical in-network patient liability amounts, including deductibles and co-pays. Since in-network providers are prohibited from balance billing their patients, Aetna must reimburse University either its billed amount or negotiate an agreed-upon rate so that the Plaintiff does not balance bill the patient – as out-of-network providers are permitted to do.

30. This is a direct action sounding in contract and equity between University and Aetna concerning Aetna's breach of the in-network exception agreement. Because resolution of the issue of the breach does not involve interpretation of the terms of the patient's Plan, this action is not preempted by ERISA.

31. Because this action is not preempted by ERISA, Plaintiff was not required to exhaust administrative remedies.

32. Loren Schechter, M.D., is board-certified by the American Board of Plastic Surgery. He is a member of the American Society of Plastic Surgery, the American Society of Reconstructive Microsurgery, the American Society of Maxillofacial Surgeons, and the American College of Surgeons. He received his medical degree from the University of Chicago Pritzker School of Medicine and completed his residency in general surgery and plastic and reconstructive surgery at University of Chicago Hospitals. He completed a fellowship in reconstructive microsurgery at the University of Chicago. Dr. Schechter is Chief of Plastic Surgery at the University of Chicago Medical School.

33. Charles Galanis, M.D., is board-certified by the American Board of Plastic Surgery. He attended medical school at the University of Wisconsin-Madison. He completed his residency in general surgery at the Johns Hopkins Hospital and a two-year research fellowship at the Memorial Sloan-Kettering Cancer Center. Dr. Galanis then completed his residency in Plastic and

Reconstructive Surgery and an additional fellowship in reconstructive microsurgery at UCLA Medical Center.

## COUNT I

## BREACH OF CONTRACT

34. Aetna entered into an agreement with University under which it granted an in-network exception for the surgical procedures to be performed by University on its patient.

35. The parties entered into valid contracts. These contracts were expressed in a series of letters dated June 15, 2015, August 5, 2015, and December 24, 2015. The June 15, 2015, letter stated: "Coverage for this service has been approved subject to the requirements in this letter," and that "Your plan does not have out-of-network benefits." The August 5, 2015, letter stated that "This service will be covered at an in-network benefit level." The December 24, 2015, letter stated "Pay at highest in network benefit."

36. As a result of Aetna's breach, Institute sustained damages in the amount of $303,200.37.

## COUNT II

## PROMISSORY ESTOPPEL

37. Aetna is estopped from denying that it entered into enforceable agreements with University, dated June 15, 2015, August 5, 2015, and December 24, 2015, in which it granted an in-network exception for the surgical procedures to be performed by University on its patient.

38. In entering into these agreements, it was foreseeable that University would rely on these agreements to its detriment. When Aetna sent the in-network exception letters prior to the patient's surgery stating that it approved the procedure at the in-network benefit level, University's surgeons proceeded to perform the surgery on the patient reasonably, substantially, and detrimentally relying on the in-network exception letter.

## COUNT III

### ACCOUNT STATED

39. The Aetna letters dated June 15, 2015, August 5, 2015, and December 24, 2015, which granted an in-network exception for the surgical procedures to be performed by University on the patient gave rise to the liability.

40. These letters were express or implied agreements between the parties that fixed the amount due.

41. These letters made an express or implied promise to pay the liability of debt for which University was owed.

42. The CMS-1500 forms and EOBs also fixed the amounts due University, which is $303,200.37

**WHEREFORE**, University demands judgment in its favor against Aetna as follows:

(a) Awarding damages for breach of contract;

(b) Awarding damages for account stated;

(c) Ordering that Aetna be estopped from denying that it entered into enforceable agreements;

(d) Awarding University, the costs and disbursements of this action, including reasonable attorneys' fees and costs and expenses in amounts to be determined by the Court;

(e) Awarding prejudgment interest; and

(f) Granting such other and further relief as is just and proper.

<u>JURY TRIAL DEMAND</u>

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: April 7, 2020  /s/ Zachary A. Jacobs

Zachary A. Jacobs
Jamie E. Weiss
QUANTUM LEGAL LLC
513 Central Avenue, Suite 300
Highland Park, IL 60035
(847) 433-4500
zach@qulegal.com
jamie@qulegal.com


Robert J. Axelrod
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
(646) 448-5263
rjaxelrod@axelrodllp.com

Leslie S. Howard
COHEN HOWARD LLP
766 Shrewsbury Avenue, Suite 200
Tinton Falls, NJ 07724
(732) 747-5202
lhoward@cohenhoward.com

Attorneys for Plaintiff University Plastic Surgery, LLC